IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| MICRO FOCUS (US), INC.<br>700 King Farm Blvd., Suite 400<br>Rockville, Maryland 20850<br><br>and<br><br>MICRO FOCUS IP DEVELOPMENT LIMITED<br>The Lawn, 22-30 Old Bath Road<br>Newbury, Berkshire, RG14 IQN<br>United Kingdom<br><br>    Plaintiffs<br><br>    v.<br><br>AMERICAN EXPRESS COMPANY<br>200 Vesey Street<br>50th Floor<br>New York, New York 10285<br><br>    Serve On:<br>    CT Corporation System<br>    111 8th Avenue<br>    New York, New York 10011<br><br>    Defendant. | CIVIL ACTION NO._____ |

## COMPLAINT

Plaintiffs, Micro Focus (US), Inc. and Micro Focus IP Development Limited (together, "Micro Focus"), by their undersigned attorneys, sue American Express Company ("American Express") for compensatory and statutory damages in an amount to be established at trial and currently estimated to exceed $14,024,694, and for other relief. In support of its claims, Micro Focus states:

## THE PARTIES

1. Plaintiff Micro Focus (US), Inc. is a Delaware corporation with its principal place of business in Rockville, Maryland. Micro Focus (US), Inc., an indirect subsidiary of Micro Focus International plc, licenses and supports business enterprise computer software.

2. Plaintiff Micro Focus IP Development Limited is a company registered in England and Wales with its principal place of business in England. Micro Focus IP Development Limited is the successor-in-interest by way of a valid assignment from the author of the intellectual property rights at issue in this action and is also an indirect subsidiary of Micro Focus International plc.

3. Defendant American Express Company is a New York corporation with its principal place of business in New York. American Express is a provider of financial services in the Unites States and worldwide.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1338(a) because this case arises under the copyright laws of the United States.

5. American Express is subject to the personal jurisdiction of this Court because, among other things, American Express has purposefully availed itself of the benefits of doing business in Maryland by its business with Micro Focus that is the subject of this action, and by its continuous and systematic contacts with this State arising out of its consumer credit and other businesses.

6. In connection with the claims stated herein, American Express has directed numerous communications, including telephone calls, emails, and documents delivered by email concerning the software at issue to Micro Focus's office in Rockville, Maryland.

American Express's contacts with Micro Focus personnel concerning the Micro Focus software support this Court's exercise of specific jurisdiction.

7. In addition, American Express has sufficiently continuous and systematic contacts with this State to be subject to this Court's general jurisdiction. At all times relevant to this action, American Express has conducted substantial business in the State of Maryland. Specifically, upon information and belief, American Express conducts substantial consumer credit business in the State of Maryland, including numerous contacts and business relationships with consumers and merchants alike.

8. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400 because American Express can be found in Maryland, as demonstrated by the contacts described herein.

## THE NATURE OF THE ACTION

9. This action arises from American Express's use of Micro Focus's copyrighted software products known as Server Express and Application Server for Server Express. American Express has exceeded its rights by using the Micro Focus software beyond what was permitted by American Express's license to use the Micro Focus software. American Express's continued use of Micro Focus software without the required licenses constitutes an infringement upon Micro Focus's registered and valid copyright in violation of 17 U.S.C. § 501.

## FACTS COMMON TO ALL COUNTS

A. **The Micro Focus Software**

    i. **Server Express**

10. Micro Focus is the author and owner of an original and proprietary software product known as "Server Express." Specifically, Micro Focus IP Development Limited is the claimant under valid copyright registrations for the version or versions of Server Express pertinent to this action, including version 2.0.11 and/or version 4.0. Micro Focus (US), Inc. has the right to license and distribute this copyrighted software. A true and accurate copy of the copyright Certificate of Registration relating to Server Express v. 4.0 is attached hereto as Exhibit A. Micro Focus has ordered true and accurate copies of the copyright Certificate of Registration for version 2.0.11 of Server Express and will submit that document to the Court as a supplement to Exhibit A promptly upon receipt.

11. Server Express consists of a collection of tools for developing computer applications written in COBOL, one of the oldest programming languages still prevalent in today's computing systems. This development process, which includes editing, compiling, and debugging existing COBOL source code, helps programmers use that code in applications that interface with more modern software.

12. Server Express translates COBOL source code from readable text into executable "object files" (a set of instructions) and embeds into those object files certain proprietary code created by Micro Focus. This process, sometimes referred to as "compiling" source code, creates object code items that require certain Micro Focus software to run or "execute" the application.

### ii. Application Server for Server Express and Server for COBOL

13. Micro Focus Application Server for Server Express software is the software required to execute object code items created during the compiling process. In certain cases, the object code can include this software directly, and in such cases it is known as the "application server components."

14. Micro Focus requires persons who wish to deploy application server components that are embedded in compiled COBOL source code to purchase separate Micro Focus application server licenses commonly referred to as "runtime" licenses.

15. At the time during which American Express began using Server Express, Micro Focus's application server components were known as "Application Server for Server Express." The current version of that product is now known as "Server for COBOL."

16. Application Server for Server Express is an original and proprietary software product belonging to Micro Focus. Specifically, Micro Focus IP Development Limited is the claimant under valid copyright registrations for the version or versions of Application Server for Server Express pertinent to this action, including version 2.2 and/or version 4.0. Micro Focus (US), Inc. has the right to license and distribute this copyrighted software. True and accurate copies of the copyright Certificate of Registration relating to Application Server for Server Express v. 2.2 and 4.0 are attached hereto as Exhibit B.

B.  **American Express's Purchase of Licenses for Use of
    <u>Server Express and Application Server for Server Express</u>**

   i.  <u>The Micro Focus Application Provider Agreement with Identex</u>

17. On or about February 3, 2004, a Micro Focus affiliate known as Micro Focus Limited entered into an "Application Provider Agreement" with a United Kingdom company then known as Identex ("Identex").

18. Identex was the author of an address standardization and verification application known as "Names, Scans, and IACE" (herein, the "IACE Application"), the operation of which depended upon embedded proprietary Micro Focus application server component software.

19. The Application Provider Agreement appointed Identex as an Application Provider permitted to distribute the expressly listed product(s) with Micro Focus's Application Server for Server Express runtime software solely for use with such licensed Application Provider product. The Application Provider Agreement did not contemplate use of Micro Focus software in any other computer application.

20. The IACE Application incorporated application server components from Micro Focus's Server Express software, deployment of which required the Application Server for Server Express runtime system to operate.

21. The Application Provider Agreement permitted Identex to distribute, in pertinent part, "annual licenses" for Application Server for Server Express runtime software (which was described in an exhibit to the Agreement as "Server Express Application Server") with the IACE Application.

22. "Annual licenses" permitted the licensee to use the Micro Focus Application Server for Server Express runtime software with the IACE Application for a period of one year in exchange for a license fee.

23. Where, as in this case, the licensee obtains, directly or indirectly, the annual license through an application provider, in this case Identex, that application provider pays Micro Focus a royalty under an agreement such as the Application Provider Agreement.

24. The Application Provider Agreement permitted Identex to appoint Wisconsin-based Firstlogic, Inc., as a dealer to which Identex was authorized to provide the Micro Focus software for marketing and distribution purposes, subject to the terms of the Application Provider Agreement.

25. Upon information and belief, in or about February 2006, Business Objects America, Inc. ("Business Objects") acquired Firstlogic, Inc. Under an amendment to the Application Provider Agreement Micro Focus permitted the addition of Business Objects as a dealer on the same terms as for Firstlogic.

26. In or about October 2007, the German enterprise software company SAP SE ("SAP") acquired Business Objects America, Inc. No amendment was agreed to by the parties adding SAP as a dealer.

### ii. American Express's purchase of the IACE Application and associated Application Server for Server Express runtime.

27. In or about 2004, American Express acquired from Firstlogic, Inc. the rights to use the IACE Application on a single server.

28. With the IACE installation package, Firstlogic, Inc. provided to American Express a single software product serial number associated with Application Server for

Server Express, along with instructions for its installation. Based on information from Identex, American Express used that software product from 2004 to 2009. Upon information and belief, Firstlogic, Inc. or its successors paid license fees to Identex for the IACE Application during that six-year period.

29. Identex paid royalty fees to Micro Focus during the 2004 to 2009 period for American Express's use, on one server, of Application Server for Server Express in conjunction with the IACE Application.

30. American Express did not acquire from Firstlogic, Inc. the right to deploy Application Server for Server Express on more than one server because American Express purchased only one license and the Application Provider Agreement provided that it could not be deployed on more than one server. Nor did American Express acquire from Firstlogic, Inc. the right to deploy Application Server for Server Express with any application other than the IACE Application.

31. American Express's last annual Application Server for Server Express license for use in conjunction with the IACE Application terminated on or about February 3, 2009, which was the last day that the Application Provider Agreement was in effect between Micro Focus and Identex. Thereafter, American Express did not have any right to use Micro Focus software to deploy the IACE Application.

32. At no point before or after such termination did American Express have the right to deploy Application Server for Server Express in conjunction with any other computer application.

33. Upon information and belief, in or about 2009, Identex or its successor SAP announced that it would "end-of-life" the IACE Application, meaning that the product

would no longer be licensed or updated with information critical to its utility. SAP encouraged its customers to upgrade to a new SAP software product that performed similar functions.

34. Upon information and belief, the updates previously supplied by Identex via Firstlogic, Inc. were critical to the functionality of the IACE Application, enabling it to perform its function for American Express, which involves managing American Express's customer address database.

35. Upon information and belief, rather than upgrading to SAP's new software product, American Express used the IACE Application as a platform upon which American Express developed, internally or with assistance from a third party, a new software computer application program that included the features necessary for American Express's application requirements. American Express refers to this new application software program as the "First Logic Application."

36. The First Logic Application, like the IACE Application, incorporates Micro Focus's copyrighted Server Express application server components and Application Server for Server Express runtime software. Its deployment therefore requires licensing to use the Micro Focus runtime. American Express was not permitted to use the single annual license for use of Application Server for Server Express runtime software granted under the Application Provider Agreement to deploy the First Logic Application, however, because it was different from the IACE Application.

37. Moreover, from 2009 to present, American Express continued to use the expired annual license for Micro Focus Application Server for Server Express to deploy the First Logic Application.

### iii. American Express's purchase of a single license for Server Express and Server for COBOL

38. In July 2003, American Express purchased, directly from Micro Focus, one "named user" license for Server Express and ten "concurrent user" licenses for Application Server for Server Express runtime software. American Express subscribed to support services for these licenses and, after 2009 when the name of the Application Server for Server Express product was changed to Server for COBOL, subscribed to support services on that product, until July 7, 2014.

39. American Express did not use these named user or concurrent user licenses or runtimes in connection with its deployment of the IACE Application or the First Logic Application. As discussed below, however, American Express's subscription to support services for these licenses has implications for the support it was required to maintain for the First Logic Application deployment licenses.

### C. American Express's Infringement of Micro Focus's Copyright

#### (i) The unlicensed deployment of copies of Server Express or Application Server for Server Express.

40. The rights that Firstlogic, Inc. conferred upon American Express terminated on or about February 3, 2009. All of American Express's use, after that date, of copies of Server Express or Application Server for Server Express runtime software embedded in the IACE Application constituted unauthorized use of copies of Micro Focus software. Furthermore, American Express's use of its Application Server for Server Express license to run the First Logic Application was never permitted, either before or after such termination date.

41. American Express's unauthorized use of copies of Server Express or Application Server for Server Express runtime software has been substantial. Whereas

American Express was, until February 3, 2009, authorized to deploy the Micro Focus software on a single server/CPU, it has expanded that deployment to at least nine server/CPUs.

42. Under the Micro Focus End User License Agreement ("EULA") applicable to American Express's use of Server Express or Application Server for Server Express from 2009 to present, American Express is required, because the current version of the First Logic Application performs operations known as "batch processing," to purchase a license type known as a "Server License for CPUs."

43. Under the Micro Focus EULA applicable to use of Server Express or Application Server for Server Express from 2009 to present, American Express was required to purchase a Server License for CPUs for each "core" in the server.

44. A "core" is a self-contained processing unit within a computer microchip. A single server can contain numerous cores.

45. American Express runs the current version of the First Logic Application (with embedded copies of Server Express or Application Server for Server Express software) on:

- six servers that contain 64 cores each;
- one server that contains 16 cores; and
- two servers that contain 32 "virtual" cores running on two 64 core servers.

46. Micro Focus is entitled to recover from American Express the price Micro Focus charges for the Server License for CPUs required to cover these 464 cores.

47.  In addition to the licenses, Micro Focus requires that persons who purchase support services for any license for a particular software product purchase support for all other copies of that same product.

48.  Because American Express maintained support services on the named user Server Express license and the concurrent user Application Server for Server Express runtime license purchased directly from Micro Focus, it would have been required to also maintain support on all Server for COBOL runtime licenses required to cover the 464 cores on which it has run the First Logic Application since 2009.

49.  Micro Focus is entitled to recover from American Express the price that Micro Focus charges for those support services.

50.  American Express was aware, no later than November 2008, that its use of the First Logic Application entailed use of Micro Focus's Server Express or Application Server for Server Express runtime software and required a license to use Application Server for Server Express.

51.  By using Server Express or Application Server for Server Express software without the required licenses, American Express infringed upon Micro Focus's registered, valid copyright.

52.  American Express's infringement was willful, because it knew that it was using Micro Focus's Server Express or Application Server for Server Express software and that its use required a license. In addition, American Express knew or should have known that Micro Focus has a registered and valid copyright in Server Express and Application Server for Server Express.

## Count I

### Copyright Infringement – Violation of 17 U.S.C. § 501 as to Server Express

53. Micro Focus incorporates the allegations of the preceding paragraphs herein by reference.

54. American Express has violated Micro Focus's valid, registered copyrights, including the pertinent copyrights covering Server Express (copyright registration No. TX 5-499-655 and No. TX 6-106-488) by using Server Express without the required license.

55. That use, which entails copying of Micro Focus's valid, registered copyrighted material, violates the exclusive rights conferred on Micro Focus under 17 U.S.C. § 106.

56. American Express has infringed, and continues to infringe, upon Micro Focus's copyright, in violation of 17 U.S.C. § 501.

57. American Express's infringement of Micro Focus's copyright was willful.

58. As a direct result of such copyright infringement, Micro Focus has suffered, and will continue to suffer, monetary and other damages.

WHEREFORE, Micro Focus requests that this Honorable Court:

(A) award Micro Focus, at its election, either actual damages and additional profits pursuant to 17 U.S.C. § 504(a) and (b), or statutory damages pursuant to 17 U.S.C. § 504(c);

(B) award Micro Focus pre-judgment interest and the costs, expenses, and reasonable attorneys' fees that it incurs prosecuting this Complaint; and

(C) grant Micro Focus such other and further relief as may appear just and proper.

## Count II

### Copyright Infringement – Violation of 17 U.S.C. § 501 as to Application Server for Server Express

59. Micro Focus incorporates the allegations of the preceding paragraphs herein by reference.

60. American Express has violated Micro Focus's valid, registered copyrights, including the pertinent copyrights covering Application Server for Server Express (copyright registration No. TX 7-300-951 and No. TX 6-106-489), by using Application Server for Server Express without the required license.

61. That use, which entails copying of Micro Focus's valid, registered copyrighted material, violates the exclusive rights conferred on Micro Focus under 17 U.S.C. § 106.

62. American Express has infringed, and continues to infringe, upon Micro Focus's copyright, in violation of 17 U.S.C. § 501.

63. American Express's infringement of Micro Focus's copyright was willful.

64. As a direct result of such copyright infringement, Micro Focus has suffered, and will continue to suffer, monetary and other damages.

WHEREFORE, Micro Focus requests that this Honorable Court:

(A) award Micro Focus, at its election, either actual damages and additional profits pursuant to 17 U.S.C. § 504(a) and (b), or statutory damages pursuant to 17 U.S.C. § 504(c);

(B) award Micro Focus pre-judgment interest and the costs, expenses, and reasonable attorneys' fees that it incurs prosecuting this Complaint; and

(C) grant Micro Focus such other and further relief as may appear just and proper.

                Respectfully submitted,

                _____/S/_____
                Stuart M.G. Seraina, Bar No. 25971
                KRAMON & GRAHAM, P.A.
                One South Street, Suite 2600
                Baltimore, Maryland 21202
                (410) 752-6030 - Telephone
                (410) 539-1269 - Facsimile

                Attorneys for Plaintiffs
                Micro Focus (US), Inc.
                Micro Focus IP Development Limited

Dated: July 29, 2014

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs Micro Focus (US), Inc. and Micro Focus IP Development Limited hereby demand a trial by jury of all issues triable of right by a jury.

/S/
Stuart M.G. Seraina, Bar No. 25971
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
(410) 752-6030 - Telephone
(410) 539-1269 - Facsimile

Attorneys for Plaintiffs,
Micro Focus (US), Inc. and
Micro Focus IP Development Limited